## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**T-MOBILE SOUTH LLC,**

                **Plaintiff,**

      **v.**                                **1:10-cv-0111-WSD**

**COBB COUNTY, GEORGIA,**

                **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Cobb County, Georgia's (the "County") motion for summary judgment [16] and T-Mobile South LLC's ("T-Mobile") motion for summary judgment [17].

## I.  BACKGROUND

This case involves the County's denial of T-Mobile's application for a Special Land Use Permit to construct a cell tower on a property owned and occupied by a local Episcopal church.  T-Mobile is a cellular service provider. Cobb County is a political subdivision in the State of Georgia that acts through its authorized officials, including the Cobb County Board of Commissioners.

T-Mobile provides cellular service to customers in Cobb County and seeks to add a cell tower on the church property to meet its area coverage goals.  Plaintiff

considered collocating its telecommunications equipment on an existing tower in the area, but concluded that collocation did not meet its coverage goals and decided instead upon the construction of a new tower and contracted to build it on property owned by the church at 1673 Jamerson Road, Marietta, Georgia 30066 ("the property").  The property is zoned "R-30," which restricts development to single family homes on lots of at least 30,000 square feet and generally restricts structures to no more than thirty-five (35) feet in height.  Because the property is zoned for residential uses, Cobb County's zoning ordinance required T-Mobile to apply for a special use permit to allow the tower to be constructed.  Cobb County's decision not to issue the permit forms the basis for this action.

      A.    <u>T-Mobile's Application</u>

On September 3, 2009, T-Mobile applied for a Special Land Use Permit (the "Application") to build, on the property, a 135-foot-tall cell tower disguised as a church bell tower.  The County's Planning and Zoning Staff reviewed the Application for compliance with the County's local zoning ordinance (the "Ordinance").  The Ordinance provides several design, location, and safety requirements for the construction of towers over 35 feet.  Official Code of Cobb County, Georgia § 134-273.  The Ordinance also lists fifteen factors to consider

when addressing whether to grant a Special Land Use Permit.  Id. § 134-37(e).

The factors relevant in this case include:

> (1) Whether or not there will be a significant adverse effect on the neighborhood or area in which the proposed use will be located.
> (2) Whether or not the use is otherwise compatible with the neighborhood. . . .
> (5) Whether or not property values of surrounding property will be adversely affected. . . .
> (8) Whether or not special or unique conditions overcome the board of commissioners' general presumption that residential neighborhoods should not allow noncompatible business uses . . . .
> (15) In all applications for a special land use permit the burden shall be on the applicant both to produce sufficient information to allow the county to fully consider all relevant factors and to demonstrate that the proposal complies with all applicable requirements and is otherwise consistent with the policies in the factors enumerated in this chapter for consideration by the county.

Id.  The Planning and Zoning Staff concluded that the Application complied with the requirements set out in the Ordinance and recommended approval of it.

On October 22, 2009, T-Mobile held a public information hearing to take questions and hear suggestions from local residents about the Application.  On October 28, 2009, in response to comments made at the hearing, T-Mobile

amended its Application to provide that the tower be a "monopine"[1] rather than a

bell tower.

On November 3, 2009, the Cobb County Planning Commission

("Commission") held a hearing to consider T-Mobile's amended Application.

Representatives of T-Mobile presented remarks and offered additional

documentation at the hearing to support its Application.  T-Mobile highlighted a

report ("T-Mobile report") suggesting that cell towers constructed close to

residences did not negatively affect residential property values.  The T-Mobile

report's conclusion was based on purported property values in two subdivisions in

other parts of Cobb County, which were adjacent to cell towers and where the

homes sold for up to $500,000.  In both of these examples, the subdivisions were

developed and the homes within them were constructed at or near cell towers that

preexisted the developments and construction.  The T-Mobile report was not

prepared by a professional property appraiser.  At the hearing, T-Mobile explained

its need for the cell tower and its radio frequency engineer discussed how the

proposed tower would help T-Mobile meet its coverage goals in the area.  Several

local residents spoke in opposition to the Application.  After hearing evidence from

---

[1] A "monopine" is a telecommunications tower disguised as a pine tree.

both T-Mobile and the opposition, the Commission voted to recommend that the Application be denied.

B.    Board of Commissioners

On November 17, 2009, Defendant Cobb County's Board of Commissioners ("Board") heard T-Mobile's Application.  Representatives of T-Mobile and local residents opposing the Application both made presentations to the Board at the meeting.

T-Mobile stated that it preferred to collocate its equipment on an existing tower, but there were no towers in the area that suited T-Mobile's needs.  Id. at 3. T-Mobile also presented photographs of a balloon test simulation,[2] which it argued showed that the tower would either not be visible or would be minimally visible to most residents in the neighborhoods in the area proposed for the tower construction.  Id.

T-Mobile also presented evidence demonstrating why it needed the tower. Id.  T-Mobile stated that while it currently provides cell coverage to the area in question, the coverage is not sufficient to allow customers to have service inside of buildings.  Id.  T-Mobile presented a computer-generated coverage map that sought

---

[2] In the "balloon test" T-Mobile tethered a red balloon to the proposed tower location with a cord that is the as long as the proposed tower is high.  T-Mobile took pictures of the tethered balloon from nearby streets to determine whether the proposed tower would be visible to area residents.

to show that areas near the proposed tower did not enjoy coverage that was satisfactory to T-Mobile. Id. T-Mobile claimed the computer-generated coverage map had been verified by an employee who conducted a drive test in the area. Plaintiff conceded that no testing was conducted to determine signal strength inside the homes or other buildings in the vicinity of the proposed tower. Id.

Opponents of the tower also presented evidence and their position on the tower. They argued that at least some of the balloon tests were conducted during windy conditions, which misrepresented the visual impact of the tower because the balloons were blown across the horizon. Id. at 4. The opponents also noted that the balloon tests were conducted when the trees in the impact area had full or nearly full leaf cover, misrepresenting the visual impact of the tower during the winter months. Id. T-Mobile admitted that the balloon test photographs do not depict the view of the proposed tower from the backyards of the closest homes, and did not depict the view of the proposed tower after the deciduous trees lost their leaves. Id.

Local resident testimony refuted the information offered by T-Mobile to support its need for the proposed tower. Local residents who had T-Mobile service testified that the service and signal strength was adequate and they were satisfied with the service they had in their neighborhood. T-Mobile did not present any

evidence of dropped calls in the area of the proposed tower or complaints about signal strength or call quality.  Id. at 4.

David Levtro, speaking on behalf of his neighborhood, also presented information opposing the Application.  Id. at 4-5.  Levtro introduced a screen shot from T-Mobile's website in which T-Mobile represented to current and potential customers T-Mobile's signal strength in the area of the proposed tower was rated "best" by T-mobile.  Id. at 5; R. 565.  Levtro also presented a survey of local residents, including many T-Mobile customers, who overwhelmingly indicated that they had adequate wireless service in the area.  Board Decision at 5; see R. 645-60. Janice Owen, a local resident, testified that she discontinued her land line telephone service and now relies exclusively upon her T-Mobile wireless phone for all of her telecommunication needs.  Board Decision at 5.  She testified that she did not have any coverage issues with T-Mobile.  Id.

The Board also reviewed a letter from Kacey Lewis, a local licensed realtor with nearly 29 years of real estate sales experience.  Board Decision at 5; R. 530. Ms. Lewis wrote that in her opinion the proposed tower would lower the property values of nearby homes.[3]  Id.  Several local residents spoke to the Board and stated

---

[3] The opponents submitted an unsigned draft letter, purportedly from Regions Bank, stating that the proposed tower would harm property values.  R. 531.  The Court does not consider this letter in its analysis.

their opinion that the proposed tower was an incompatible land use for the area.

Board Decision at 5-6.

After hearing the evidence submitted at the Board meeting and considering the planning and zoning Ordinance and the Commission's recommendations, the Board unanimously voted to deny the Application.  In its written opinion, the Board listed four reasons for denying Plaintiff's Application:

(1) The proposed tower will have a significant adverse effect on the neighborhood and area surrounding it.  Evidence showed the tower would be an incompatible commercial use in a residential area.  The County Zoning Ordinance specifically discourages towers being located in residential areas.  It is important to protect the quality of life and aesthetics of residential neighborhoods.  Any concerns related to health hazards from radio waves or electromagnetic fields cannot and were not considered by the Board, as mandated by federal law.

(2) The proposed tower is not compatible with the neighborhood, as the neighborhood is comprised of residential uses and is designated for low density uses by the Future Land Use Map.

(3) There are no unique or special conditions that overcome the Board's general presumption that residential neighborhoods should not allow noncompatible business uses.  Additionally, testimony revealed that T-Mobile customers in the area enjoyed satisfactory wireless service.  It is the opinion of the Board that the testimony from various residents combined with the evidence submitted and the individual commissioners' experience and interpretation of the evidence and testimony, constitute substantial evidence that is competent, relevant, and adequate to support denial of the SLUP Application.

(4) Allowing this commercial use on this property would be inappropriate.  Although the Board of Commissioners has sometimes permitted cell towers at churches in residential areas, this site is not similar to those.

> This is a very small church which has a structure similar to that of a house. It is not located on a major road. The nearest commercial zoning is at least one mile away, and most are considerably further than that. Over the years the Board of Commissioners, county staff, and nearby residents have expended considerable effort and expense in trying to improve the Canton Road corridor and eliminate commercial intrusion into this residential area. Allowing a cell tower at this location would undermine those longstanding efforts.

Id. at 7-8.

C. Procedural History

On January 14, 2010, T-Mobile filed this action for injunctive relief, alleging that the Board's decision violated plaintiff's rights under the Telecommunications Act of 1996 ("TCA") and the Constitution of the State of Georgia.[4] Plaintiff claims it was entitled to injunctive relief compelling the County to grant its Application for construction and operation of the cell tower on the Property. On February 8, 2010, the County filed its Answer. On August 16, 2010, T-Mobile and the County each moved for summary judgment.

II. DISCUSSION

A. Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

---

[4] T-Mobile later dismissed its claim under the Constitution of the State of Georgia [13], and the Court does not consider it here.

any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56 (c).  The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact.  Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999).  Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial.  Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999).  The non-moving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings."  Id.

The Court must view all evidence in the light most favorable to the party opposing the motion and must resolve all reasonable doubts in the non-movant's favor.  United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am., 894 F.2d 1555, 1558 (11th Cir. 1990).  "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ."  Graham, 193 F.3d at 1282.  "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial."  Herzog, 193 F.3d at 1246.  But, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is

proper.  <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

The filing of cross-motions for summary judgment "does not establish that there is no material fact in issue and that a trial is therefore unnecessary." <u>Donovan v. District Lodge No. 100, Int'l Ass'n of Machinists & Aerospace Workers</u>, 666 F.2d 883, 886 (11th Cir. 1982).  "Nonetheless, cross-motions may be probative of the non-existence of a factual dispute when . . . they demonstrate a basic agreement concerning what legal theories and material facts are dispositive." <u>U.S. v. Oakley</u>, 744 F.2d 1553, 1555-56 (11th Cir. 1984) (citing <u>Bricklayers Int'l Union, Local 15 v. Stuart Plastering Co.</u>, 512 F.2d 1017 (5th Cir. 1975)).

B.    <u>Cross-Motions for Summary Judgment</u>

The parties both move for summary judgment.  Plaintiff claims the County's decision to deny the Application was not supported by substantial evidence.  The County argues the substantial evidence supports its denial decision.  In arguing whether the Board's decision was supported by substantial evidence, the parties focus on two findings by the Board:  (1) that the proposed tower would not be compatible with the area as it is a commercial intrusion into a residential area; and (2) that T-Mobile has not demonstrated that its existing service is unsatisfactory or that a new tower is required.  The parties agree the facts are not in dispute.  Thus,

11

the issue here is whether there was substantial evidence to support the Board's decision.

       1.     Overview of the TCA

The Telecommunications Act ("TCA") was passed to address "zoning decisions by state and local governments [that] had created an inconsistent array of requirements, which inhibited both the deployment of personal communications services and the rebuilding of a digital technology-based cellular telecommunications network." Preferred Sites, LLC v. Troup County, 296 F.3d 1210, 1214 (11th Cir. 2002) (citing H.R. Rep. No. 104-204, at 94 (1995), *reprinted in* 1996 U.S.C.C.A.N. 10, 61). The TCA is intended "to promote competition and higher quality in American telecommunications services and 'to encourage the rapid deployment of new telecommunications technologies.'" Michael Linet, Inc. v. Vill. of Wellington, 408 F.3d 757, 761 (11th Cir. 2005) (citing City of Rancho Palos Verdes v. Abrams, 544 U.S. 113 (2005)). The TCA places several substantive and procedural limitations on the authority of state and local governments in the regulation and construction of facilities for telecommunications equipment. The TCA requires that a decision by a zoning board denying the construction of a cell tower to be both "in writing and supported by substantial

evidence contained in a written record."  47 U.S.C. § 332(c)(7)(B)(iii).[5]  A party

whose application for construction of a cell tower has been denied may challenge

the zoning board's refusal in federal court.  In evaluating refusals to grant cell

tower construction applications, the courts acknowledge that "[l]and use decisions

are basically the business of state and local governments."[6]  Am. Tower LP v. City

of Huntsville, 295 F.3d 1203, 1206 (11th Cir. 2002); see also 47 U.S.C. §

332(c)(7)(A); Village of Wellington, 408 F.3d at 761.

The "phrase 'substantial evidence contained in a written record' is the

traditional standard used for judicial review of agency actions."  AT&T Wireless

PCS, Inc. v. City of Chamblee, 10 F. Supp. 2d 1326, 1329 (N.D. Ga. 1997).

Courts typically define 'substantial evidence' as "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.  Am. Tower,

295 F.3d at 1207.  The "'substantial evidence' standard is not as stringent as the

preponderance of the evidence standard, [but] it requires courts to take a harder

_____

[5] T-Mobile does not challenge that the Board's decision satisfied the "in-writing" requirement of the TCA.

[6] Plaintiff argues that "Congress determined that the federal interest in wireless communications should take priority over state zoning authority . . . ."  Plaintiff's Opening Br. at 13.  This is an overstatement of the law and conflicts with the text of the TCA.  47 U.S.C. § 332(c)(7)(A) ("Except as provided in this paragraph, nothing this chapter shall limit or affect the authority of a [local zoning authority] over decisions regarding the placement, construction, and modification of personal wireless service facilities.").

look than when reviewing under the arbitrary and capricious standard." <u>Preferred Sites</u>, 296 F.3d at 1218.  "A court cannot substitute its own judgment for that of the local board, but it must overturn the board's if the decision is not supported by substantial evidence." <u>Id.</u> at 1218-19.  The party challenging a local zoning board's decision has the burden to prove that the decision is not supported by substantial evidence.  <u>Am. Tower</u>, 295 F.3d at 1207.

2.      Incompatible Use

T-Mobile contends that its Application met all of the objective criteria articulated in the Ordinance and the Board's decision to deny the Application was not supported by substantial evidence.  T-Mobile argues that the Board's conclusion that the proposed tower would be incompatible with the existing neighborhood was based only on an aesthetic concern, and the Court of Appeals for the Eleventh Circuit has held that generalized aesthetic concerns are not substantial evidence.  <u>Preferred Sites</u>, 296 F.3d at 1219-20.

The County contends that the evidence opposing the Application consisted of more than mere generalized aesthetic concerns.  Defendant argues that the testimony from local residents substantially related not to mere aesthetic concerns but whether it is appropriate to construct a commercial cell tower in any configuration in an area zoned for residential use, particularly when the evidence in

this case established that construction would reduce property values.  Defendants

argue that this inappropriate usage, coupled with the property value reduction

shown, was substantial evidence supporting the Board's decision.  The Court

agrees.

The facts in this case are similar to those in Michael Linet, Inc. v. Village of

Wellington, 408 F.3d 757 (11th Cir. 2005).  In Village of Wellington, Linet, an

agent for a wireless service provider, sought a permit to construct a cell tower on a

golf course in a residential area.  Id. at 760.  The Village denied the application in

response to strong opposition from local residents.  Id.  The residents expressed

concern that the construction of the tower would adversely affect local property

values.  Linet sued the Village in federal court, alleging violations of the TCA.  Id.

The district court found the application denial was supported by substantial

evidence.  Id.  On appeal, the Eleventh Circuit affirmed, concluding that while

"[a] blanket aesthetic objection does not constitute substantial evidence under [the

TCA, a]esthetic objections coupled with evidence of an adverse impact on property

values or safety concerns can constitute substantial evidence."  Id. at 761.  Because

the Village "heard objections from residents and a realtor concerning the cell site's

negative impact on real estate values," and because the Village heard testimony

regarding safety concerns, it had sufficient evidence to support its denial.  Id. at

762.  The court discounted testimony from Linet's expert stating that the tower

would not impact home values because the expert considered the impact of "a

different tower, [in a] different location . . . ."  Id.

   The Eleventh Circuit in American Tower LP v. City of Huntsville reached a

similar conclusion.  295 F.3d 1203 (11th Cir. 2002).  In American Tower, a

construction company requested a permit to construct a cell tower in a residentially

zoned area located near two schools and several soccer fields.  Id. at 1206.  The

city denied the permit, and American Tower brought an action in federal court

under the TCA.  Id.  The district court found the denial was not supported by

substantial evidence, and the city appealed to the Eleventh Circuit.  Id.  The

Eleventh Circuit reversed, finding that substantial evidence supported the denial of

the permit.  The court concluded that the local zoning board was "authorized to

consider . . . the proposed tower's negative aesthetic impact (as well as its effect on

property values) and the proposed tower's effect on the health, safety, and welfare

of the public."  Id. at 1208.  The zoning board heard testimony from several

residents on the negative aesthetic affect of the proposed tower, as well as a local

realtor who testified that the tower would make it harder to sell houses in the

neighborhood and that she had already lost potential buyers because of the

proposed tower.  Id.  The zoning board also relied on testimony regarding safety

16

questions concerning the proposed tower's close proximity to several soccer fields used by children.  Id. at 1209.  The court ultimately concluded that substantial evidence supported the zoning board's decision.  Id.

T-Mobile argues that the Eleventh Circuit decision in Preferred Sites, LLC v. Troup County, 296 F.3d 1210 (11th Cir. 2002), supports that it is entitled to summary judgment.  The Court disagrees.  In Preferred Sites, the Eleventh Circuit affirmed the district court's decision that the local zoning board improperly denied Preferred Sites' application to construct a cell tower.  In that case, unlike the matter before the Court, the only evidence opposing the application was an affidavit of a local citizen and five petitions from 58 local citizens.  Id. at 1219.  Of the five petitions, only two contained the individuals' signatures and addresses, and those petitions did not indicate the reason the individuals were signing the petitions.  Id. The one affidavit submitted only described general concerns of citizens regarding the proposed tower's negative aesthetic affect.  Id.  This evidence did not constitute substantial evidence to support the zoning board's denial of the permit.  Id. at 1220.

Here, the evidence of record goes well beyond general aesthetic objections. The opponents of the tower introduced evidence from a local realtor who indicated that the proposed tower would negatively affect local property values.  R. 530.  In

contrast, T-Mobile's evidence of economic impact was based on the economic

impact of different towers in very different kinds of neighborhoods.  R. 352-53.

These other neighborhoods are not a proper or credible comparison because the

homes were constructed around pre-existing cell towers.  See id.  The T-Mobile

report indicated only that the homes increased in value since they were

constructed, it does not indicate what affect the tower had on home values in the

area or what impact the construction of a tower would have on existing homes in

the neighborhood in which a new tower is erected.  The realtor's letter offered in

opposition to the Application is the only credible evaluation of the proposed

tower's impact on home values in the neighborhoods at and near the proposed

tower construction and the opinion given was that values would be affected

adversely.

T-Mobile meets some of the requirements contained in the Ordinance, but it

fails to sufficiently address the Ordinance's requirement that towers be located

outside of residential areas when possible.  Official Code of Cobb County, Georgia

§ 134-273(3)(i) ("Nonresidential sites are encouraged for tower location where

possible and use of platted lots in existing subdivisions is discouraged.").  As the

applicant, the Ordinance required T-Mobile to demonstrate its need for the permit.

See id. § 134-37(e)(15).  Several residents testified that the proposed tower was

incompatible with the surrounding residential area.  Board Decision at 5-6.

Plaintiff contends that its balloon tests show there is only a minimal, if any, impact

on the local residents.  The Board reasonably discounted the balloon tests because

T-Mobile conducted at least some of the tests during conditions that "caused the

balloon to be blown 'down horizon' which would make the photosimulations

inaccurate," and because the balloon tests do not evaluate the view from the

backyards of the closest homes or after deciduous trees lost their leaves.  Board

Decision at 4.  It was the Board's prerogative to determine what weight if any to

give to the test.

      This is not a case where the only evidence offered were the opinion of mere

aesthetic concerns.  The aesthetic objections asserted here were substantially

related to and supported by the residents' concerns about and the evidence showing

an adverse impact on property values and other local impacts.  See Village of

Wellington, 408 F.3d at 761.  Plaintiff's evidence to the contrary, including its

report pertaining to property values in other areas and its balloon tests, are

sufficiently flawed and did not discredit that there existed substantial evidence to

suggest the Board's decision to deny the Application.[7]

_____

[7] The Board's decision crediting the opposition's evidence over T-Mobile's
evidence when determining the economic affect of the proposed tower on home

3.      Demonstrated Need

The parties dispute whether the Board's finding that T-Mobile failed to demonstrate a sufficient need for the proposed tower also was supported by substantial evidence.  T-Mobile contends that the Board's conclusion that Plaintiff's current service was "satisfactory" misinterprets the TCA because the TCA requires "competition" among telecommunications providers.  T-Mobile argues that "satisfactory" service is not sufficient to compete; "wireless providers must have the best possible coverage within their networks . . . ."[8]  T-Mobile's Reply Br. at 12.  Plaintiff points to its computer-generated coverage map, which shows that "there is an area of poor coverage in the area surrounding the proposed tower."  T-Mobile's Opening Br. at 23.  The County argues the Board was justified in denying Plaintiff's Application because substantial evidence shows that T-Mobile has adequate cellular coverage in the subject area and T-Mobile failed to meet its burden under the Ordinance of showing why it needs the new tower.

The evidence shows that T-Mobile represented to its customers in advertising materials that the area in question has T-Mobile's "best" signal

---

values "is not one the federal judges can just second-guess per the TCA."  Am. Tower, 295 F.3d at 1208 n. 7.

[8] The Court notes that T-Mobile's radio frequency engineer wrote in his report, upon which the Board relied, that "[i]n today's competitive marketplace, T-Mobile requires **adequate** coverage to be competitive and to fulfill our responsibilities under our FCC license."  R. 462 (emphasis added).

strength.  R. 565.  Plaintiff now asserts that service in the area in question is "poor" and insufficient for customers to use their handsets in residential buildings. T-Mobile has not addressed and certainly has not resolved this important discrepancy in what it has represented about the quality of its service in the area. Plaintiff did not offer any evidence to show any change in circumstances causing its service to erode from "best" to "poor."

T-Mobile argues that its "expert technical evidence [showing the need for the tower] is essentially unrebutted except for 'lay person' drive test data purporting to show 'acceptable' coverage in the area."  Plaintiff's Reply Br. at 13. T-Mobile criticizes the local resident's drive test as "junk science" cast as expert testimony.  See id. at 13-14.  To the extent Plaintiff contends that it somehow presented "expert testimony," the Court disagrees.  T-Mobile did not establish that the evidence qualified as expert testimony or that the testimony was traditional expert testimony.  McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1256 (11th Cir. 2002).  In the end, the Board had the responsibility to evaluate the quality and credibility of the testimony offered by each party, including the engineer who testified for T-Mobile.  The Court notes that T-Mobile's engineer did not evaluate in home signal strength – the strength T-Mobile argued was the problem sought to be addressed by the new tower.

The testimony of local residents about their existing T-Mobile service was equally credible evidence –and perhaps the better competitive measure –that Plaintiff's customers in the area at issue in this case are satisfied with their service. Plaintiff did not offer any evidence that any T-Mobile customer was or is dissatisfied with their wireless service.  Indeed, the weight of the evidence is that they are satisfied.  Board Decision at 5; R. 667.  The Board even heard testimony from one local resident who discontinued her land line telephone service and now relies exclusively on her T-Mobile wireless phone for all her needs.  Id.  Finally, T-Mobile did not present any evidence that it had received complaints of dropped calls from its customers in the area near the proposed tower.  Board Decision at 4; R. 666.  This evidence, taken together with T-Mobile's representation that its signal strength in the area was the "best," supports the Board's conclusion that T-Mobile did not meet its burden of showing "[w]hether or not special or unique conditions overcome the board of commissioners' general presumption that residential neighborhoods should not allow noncompatible business uses."  Official Code of Cobb County § 134-37(e)(8).  This Court will not second guess the Board's credibility determination.  Am. Tower, 295 F.3d at 1208 n.7.  The Board's conclusion that T-Mobile failed to meet its burden of showing the need for the tower is supported by substantial evidence.

## III.   CONCLUSION

The Court has carefully evaluated the undisputed evidence in this case and concludes that the Board's findings that (1) that the proposed tower would not be compatible with the area as it is a commercial intrusion into a residential area; and (2) that T-Mobile has not demonstrated why its existing service is not satisfactory are both supported by substantial evidence.  The Court further finds that, on this evidence as a whole, T-Mobile has not shown that the Board's decision was not based on substantial evidence.  Rather, the record here supports that the Board evaluated all of the evidence presented, weighed the credibility of and weight to be given to the evidence, and, based on substantial evidence, decided to deny the Application.  Accordingly,

**IT IS HEREBY ORDERED** that the County's Motion for Summary Judgment [16] is **GRANTED**.

**IT IS FURTHER ORDERED** that T-Mobile's Motion for Summary Judgment [17] is **DENIED**.

**SO ORDERED** this 31st day of January, 2011.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE